

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| SHERRIE MYERS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | NO. 1:10-CV-172 |
| | § | |
| ALLSTATE TEXAS LLOYD'S, | § | |
| MICHELLE RANDOLPH, and | § | |
| JAY AYERS, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER
## RE PLAINTIFF'S MOTION TO REMAND

Pursuant to 28 U.S.C. § 636 and the Local Rules for the United States District Court for the

Eastern District of Texas, the District Court referred this matter to the undersigned United States

Magistrate Judge, at Beaumont, Texas, for entry of findings and recommendation on case-

dispositive motions and determination of non-dispositive matters.[1]  Pending before the Court is the plaintiff's Motion to Remand (doc. #7).

**Background**

i.      Pled Claims and Facts

On February 8, 2010, the plaintiff, Sherrie Myers ("plaintiff" or "Myers") filed her Original Petition in the 128th Judicial District Court of Orange County, Texas, against the defendants Allstate Texas Lloyd's ("Allstate,"), Michelle Randolph ("Randolph"), and Jay Ayers ("Ayers").  *See Plaintiff's Original Petition, filed with Notice of Removal* (doc. #1).  According to the facts set forth in the plaintiff's Original Petition, Myers resides in Orange County, Texas.  *See Original Petition*, at p. 1.  Defendant Michelle Randolph is an individual residing in Silsbee, Texas, and defendant Jay Ayers is an individual residing in Orange, Texas.  *Id.*  at p. 2. The Original Petition states that Randolph engages in the business of adjusting insurance claims in the States of Texas, and Ayers engages in the business of selling insurance in the State of Texas.  *Id.*  According to its *Notice of Removal*, Allstate Texas Lloyd's is an association of underwriters whose individual underwriters are all residents and citizens of the States of Illinois and Virginia.  *See Notice of Removal,* at p. 2.

---

[1] 28 U.S.C. § 636 directs against magistrate judges disposing of claims or defenses absent the consent of all parties.  No definitive Supreme Court or Fifth Circuit decision ultimately holds that an order on a motion to remand is case-dispositive under the magistrate judge statute, 28 U.S.C. § 636.  Other courts, including United States Magistrate Judge Earl S. Hines in this district, have concluded that a magistrate judge may rule on a motion to remand at least when review by the District Judge is not foreclosed.  *See, e.g., Escuadra v. Geovera Specialty Ins. Co.*, No. 1:09-CV-974, 2010 WL 3633009, 2010 U.S. Dist LEXIS 94301 at *2-*4 (E.D. Tex. Sept. 9, 2010). As Judge Hines explained in *Escuadra*, both parties can secure district judge review of any order entered by the magistrate judge.  *Id.*  Furthermore, the Local Rules for the Eastern District provide that in the event a motion to remand is granted, the Clerk of Court shall not transmit the case file back to the state court any sooner than the twentieth day following entry of the order.  *See* E.D. Tex. R. CV-83(b).  This time period allows the parties to object to any ruling by the magistrate judge under 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72 before remand occurs.  Accordingly, this Court elects to issue an order rather than a report and recommendation on the remand issue.

Plaintiff states that she is the owner of a Texas Homeowners' Insurance Policy ("the Policy") issued to her by Allstate for coverage of the insured property located at 608 David Drive, Bridge City, Texas. *See Original Petition* at pp. 2-3. The plaintiff owns the insured property, which is located in Orange County, Texas, in the Eastern District of Texas. *Id.* at p. 3.

On September 12th through September 13th, 2008, Hurricane Ike struck the area, and the plaintiff's insured property sustained wind damage and interior water damage as a result of the hurricane. *Id.* at p. 3. The plaintiff also states that winds blew off a bolted-down metal chimney cap, and the joists within the roof are separating in places. *Id.* She further states that the hurricane's winds caused the roof decking to warp and she sustained damage to her personal belongings and contents within the home. *Id.* Accordingly, immediately after the storm, Myers filed an insurance claim with Allstate for the damages caused by the hurricane. *Id.* Specifically, the plaintiff submitted a claim to Allstate against the Policy for roof damage, water damage, wind damage, structural damage and contents damage to the property and accordingly requested that Allstate cover the cost of repairs to the property pursuant to the Policy. *Id.*

The plaintiff contends that Allstate assigned several adjusters to her claim, but she claims that she received a letter from Allstate rejecting payment on her claim before Allstate had an adjuster inspect her property. *Id.* She states that the first adjuster inspected the property for only fifteen minutes, and never got up on the roof and never provided a report, but promised that "we will cover everything." *Id.* The second adjuster was at the property for ten minutes and never provided a report. *Id.* at pp. 3-4. The third adjuster arrived with Jay Ayers, the plaintiff's insurance agent. *Id.* at p. 4. Allstate denied the plaintiff's claim in full. *Id.*

The Original Petition goes on to allege that Allstate wrongfully handled the plaintiff's claim in a number of ways, including wrongfully denying the request for repairs, even though the Policy covered those losses; underpaying plaintiff's claim; "under-scoping" of the damages during the investigation of the claim; and continuing to delay the payment for damages to the property. *Id.* at p. 4. Plaintiff further alleges that Allstate failed to perform its contractual duties under the Policy by failing to pay the full proceeds of the Policy and failing to adequate compensate plaintiff. *Id.*

As for Randolph, the adjuster, the plaintiff contends that she, along with Allstate, misrepresented that the damage to the property was not covered under the Policy, even though the damages was caused by a covered occurrence. *Id.* Plaintiff further avers that Allstate and Randolph failed to make an attempt to settle the plaintiff's claim in a fair manner, although they were aware of their liability to plaintiff under the Policy. *Id.* Plaintiff also claims that Allstate and Randolph failed to explain the reasons for their offer of an inadequate settlement, failed to offer adequate compensation without explanation, failed to communicate that any future settlements or payments would be forthcoming, failed to affirm or deny coverage within a reasonable time, refused to fully compensate the plaintiff under the Policy and failed to conduct a reasonable investigation of the claim. *Id*. at p. 5. The plaintiff further contends that Allstate and Randolph knowingly or recklessly made false representations as to material facts and/or knowingly concealed all or part of material information from the plaintiff. *Id.* at p. 6.

The plaintiff goes on to make several factual allegations against Ayers, her insurance agent. *Id.* at p. 12. She states that her claim against him stems from his failure to purchase the amount of flood coverage that plaintiff requested. *Id.* In sum, the plaintiff states that she switched her insurance carrier to Allstate and used Ayers as her agent in 2005, and she requested that Ayers

obtain $75,000 in flood coverage for her, the same amount she had maintained previously. *Id.* She claims that Ayers agreed to obtain the $75,000 in coverage, effective immediately. *Id.* When Hurricane Ike hit, she made a claim for damages to her home caused by flooding. *Id*. At that time, she was informed that she only had $39,100 in flood coverage for her dwelling. *Id.* She states that she then went to Ayers' office upon being informed of the lesser flood coverage, and she claims that she was then provided with a document with "her obviously forged signature" authorizing a reduction coverage. *Id.* She contends that Ayers failed to purchase a sufficient amount of flood coverage and then tried to cover up his mistake. *Id.* She claims that Ayers made misrepresentations about her flood coverage, and the crux of her claims against Ayers arise from this misrepresentation. *Id*. at 13.

Based upon these alleged facts, the plaintiff asserts the following causes of action. Against Randolph, she claims violations of the Texas Insurance Code, Section 541.060(a) by engaging in unfair settlement practices. *See Original Petition*, at p. 7. She also asserts causes of action for fraud and conspiracy to commit fraud against Randolph. *Id.* at pp. 8-9.

Against Ayers, the plaintiff asserts causes of action for violation of the Texas Insurance Code, Section 541.061(1),(2) and (3) which govern misrepresentations of an insurance policy; noncompliance with the Texas Deceptive Trade Practices Act-Consumer Protection Act (DTPA), specifically Section 17.46(b)(5),(7),(9),(12) and (24) of the Texas Business and Commerce Code; fraudulent misrepresentation; negligent misrepresentation; fraud; and breach of contract.

Only the claims against Randolph and Ayers are put at issue by the motion to remand because the removal is based on an allegation of improper joinder of those allegedly non-diverse

defendants, as discussed below.  Accordingly, the Court will focus solely on those causes of action against Randolph and Ayers.

      ii.       Notice of Removal and Motion to Remand

On March 26, 2010, Allstate file its Notice of Removal to this United States District Court. *See Notice of Removal* (doc. #1).  As grounds for removal, Allstate contends that there is diversity of citizenship and accordingly federal jurisdiction exists pursuant to 28 U.S.C. § 1332.  Allstate states that there is complete diversity of citizenship and the requisite $75,000 amount in controversy has been met.[2]  In support, Allstate contends that Randolph and Ayers were improperly joined and their citizenship should not be considered.  *See Notice of Removal*.  Allstate contends that the Ayers has been fraudulently joined because the plaintiff's claims against him are unspecific and conclusory and an agent has no duty to explain the terms or coverages of a policy to the insured. *See id.* at p. 2.  Allstate further argues that Randolph has been fraudulently joined because there is no basis to reasonably predict that Texas law might imposed liability on Randolph because the plaintiff has set forth no real facts relating to her. *Id.* at p. 4.

On April 23, 2010, the plaintiff filed her motion to remand (doc. #7).  The plaintiff generally argues that Randolph and Ayers are both properly joined.  *See Motion to Remand*, at p. 6.  First, plaintiff contends that she can maintain a cause of action against both Ayers and Randolph under

---

[2]The plaintiff's Original Petition is silent as to the actual amount of damages sought, but the pleading outlines several categories of damages asserted by plaintiff. *See Original Petition*, at pp. 19-21.  In the Notice of Removal, Allstate avers that the amount in controversy requirement is met because the plaintiff made a demand to Allstate in writing for economic damages of $435,160, and Allstate attached this demand letter to its Notice of Removal.  Allstate also points out that the causes of action asserted by plaintiff and accompanying damages would support the amount in controversy requirement.  In her motion to remand, the plaintiff does not counter this characterization of the damages sought or dispute that the requisite  amount of controversy has been met.

the Texas Insurance Code because adjusters and agents can be held individually liable under the Insurance Code. *Id.* at p. 9. Plaintiff further argues that her factual allegations against Randolph and Ayers are sufficient to support valid causes of action because they specifically concern the wrongful conduct attributable to Randolph and Ayers. *Id.* at pp 12-13. Accordingly, because plaintiff contends that she has sufficiently stated causes of action against Randolph and Ayers under Texas law for purposes of the improper joinder analysis, plaintiff asserts that diversity jurisdiction is lacking and the case must be remanded. The plaintiff also argues that the removal is procedurally defective because all properly joined defendants did not consent to removal, and Ayers and Randolph did not sign the Notice of Removal. *Id.* at p. 6.

Allstate responded in opposition, reasserting the arguments and reasons supporting removal as stated in the *Notice of Removal*. *See Allstate Texas Lloyd's Response to Plaintiff's Motion to Remand* (doc. #8). Allstate first states that Randolph and Ayers were not required to consent to removal in this case because Allstate has argued that they were improperly joined. *Id.* at p. 3. Allstate further argues that there is no possibility of recovery against Randolph or Ayers in this case based on the facts pled in the plaintiff's Original Petition. Specifically, Allstate contends that there are no facts in the pleading supporting the causes of action alleged against Randolph or Ayers. In support, Allstate points to several district court cases denying remand where the causes of action pled against the non-diverse defendant(s) were conclusory, unspecific and insufficient. *Id.* at pp. 7-11. Allstate also argues that the plaintiff's claims against Randolph fail under the pleading requirements of Federal Rules of Civil Procedure 12(b)(6) and 9(b), and that Ayers does not owe a duty of disclosure to plaintiff and the plaintiff cannot assert a cause of action against Ayers for her own failure to read and understand the Policy. *Id.* at pp. 15-17.

Rather than discuss the briefs verbatim, for the sake of efficiency the Court will refer to them as needed in its analysis below.

iii.     Post-Removal Amendment

Because the remand analysis turns on the plaintiff's pleadings, the Court notes that the plaintiff filed a motion to amend her complaint after removal to this Court, specifically for purposes of adding an additional adjuster defendant. *See Opposed Motion for Leave to Amend* (doc. #9). The Court has not ruled on the motion to amend to date, as the undersigned finds it appropriate to rule upon the jurisdictional issues first. The Original Petition is therefore still the live pleading before the Court.

In any event, the amendment of the plaintiff's claims would not affect the Court's analysis on the motion to remand. The Original Petition filed in the 128th District Court of Orange County was the live pleading *at the time of removal*, on March 26, 2010. This procedural posture is relevant under the remand analysis, discussed *infra*.

**Discussion:  Relevant Legal Standards**

i.     Jurisdiction and Remand Procedure

This Court is of limited jurisdiction and may hear a case only when jurisdiction is both authorized by the United States Constitution and confirmed by statute. *Owen Equip. Co. v. Kroger*, 437 U.S. 365, 371 (1978); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *In re Bissonnet Invs. L.L.C.*, 320 F.3d 520, 525 (5th Cir. 2003). It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Kokkonen*, at 377.

Title 28, United States Code, Section 1441(b) permits a defendant to remove an action to federal court based on diversity of citizenship.[3] Title 28, United States Code, Section 1447(c) authorizes motions to remand to the state court if the removal was defective.[4]

The removing party bears the burden of showing that federal jurisdiction exists and removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.), *cert. denied,* 516 U.S. 865 (1995); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006) (the party asserting federal jurisdiction when it is challenged has the burden of establishing it); *Peoples Nat. Bank v. Office of Comptroller of Currency of U.S.*, 362 F.3d 333, 336 (5th Cir. 2004) (citing *Pettinelli v. Danzig,* 644 F.2d 1160, 1162 (5th Cir.1981)). The removing party's burden is a "heavy" one. *See Sid Richardson Carbon & Gasoline Co. v. Interenergy Res.*, 99 F.3d 746, 751 (5th Cir. 1996). Ambiguities and doubts should be construed against removal because the removal statute should be strictly construed in favor of remand. *Manguno*, at 723. When determining whether jurisdiction is present and removal is proper, the Court is to consider the claims as alleged in the state court petition as they existed at the time of removal. *Id.* Because the petition as filed in state court controls the inquiry, post-removal filings may not be considered when or to the extent that they present new causes of action or theories. *First Baptist Church of Mauriceville v. Guideone*

---

[3]     "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. *Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.*" Title 28, United States Code, Section 1441(b) (emphasis added).

[4]     "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Title 28, United States Code, Section 1447(c).

*Mutual Insurance Co.*, No. 1:07-CV-988, 2008 U.S. Dist. LEXIS 75961 at *9-*10, 2008 WL 4533729 (E.D. Tex. Sept. 29, 2008) (Hines, J.) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999); *Cavallini v. State Farm Mut. Auto Ins. Co,* 44 F.3d 256, 264 (5th Cir. 1995)).

Complete diversity of citizenship must exist between all plaintiffs and all defendants to establish federal subject matter jurisdiction. *See Strawbridge v. Curtiss*, 7 U.S. 267, 2 L. Ed. 435 (1806); *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992). Simply stated, "all the parties on one side must be citizens of the state in which the suit is brought, and all the parties on the other side must be citizens of some other state or states." *Louisville C. & C.R. Co. v. Letson,* 43 U.S. 497, 500 (1844). Only citizenship of properly joined parties can establish federal subject matter jurisdiction. *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc), *cert. denied* 544 U.S. 992 (2005).

ii.     Improper Joinder

The doctrine of improper joinder prevents defeat of federal removal jurisdiction premised on diversity by the presence of an improperly joined, non-diverse defendant. *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009). Citizenship of an improperly joined party is totally disregarded in determining the court's subject matter jurisdiction. *Smallwood*, 385 F.3d at 572. In *Smallwood,* the Fifth Circuit stated that "the doctrine of improper joinder rests on these statutory underpinnings, which entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Id*. at 573. Since the purpose of the improper joinder inquiry is to determine whether the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case. *Id.*

Given this focus, *Smallwood* recognized two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* Quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003). In this case, based upon the parties' briefs, only the second implication of improper joinder is an issue.

The removing party who claims improper joinder must prove that the plaintiff's petition fails to establish a valid cause of action against the non-diverse party. *Id.* In other words, the removing party must prove that there is no reasonable possibility that the plaintiff will be able to establish a cause of action against the party in state court. *Id.* This approach focuses on whether the plaintiff has asserted a valid state-law cause of action against the non-diverse defendant. *Id.* As the Fifth Circuit further explained in *Smallwood*, the test for determining the ability of the plaintiff to establish a cause of action against the non-diverse party in state court hinges upon there being "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. Put another way, "there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Menendez v. Wal-Mart Stores*, No. 09-40993, 364 F. App'x 62, 2010 U.S. App. LEXIS 2139 at *17, 2010 WL 445470 (5th Cir. Feb. 1, 2010) (quoting *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007)) (emphasis and quotation marks in original).

In determining whether there is a reasonable basis to predict the plaintiff might recover against a defendant under state law, a court may resolve the issue in one of two ways. *Smallwood*, 385 F.3d at 573. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the

allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. *Id.*

There are cases, however, in which a further summary inquiry is appropriate to "identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74. The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6) because the court may 'pierce the pleadings' and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim." *Campbell*, 509 F.3d at 669 (citing *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir.), *cert. denied* 546 U.S. 813); *see also Travis*, 326 F.3d at 648-49. The decision to pierce the pleadings is discretionary. *Smallwood*, 385 F.3d at 573; *see also McKee v. Kansas City Southern Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004); *Travis*, 326 F.3d at 649. The court may consider summary judgment-type evidence such as affidavits "to the extent that the factual allegations in...affidavit[s] clarify or amplify the claims actually alleged in the...petition." *Griggs*, 181 F.3d at 700 (internal quotation marks omitted). In doing so, the court must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. *Menendez*, 2010 U.S. App. LEXIS 2139 at *18 (quoting *Travis*, 326 F.3d at 649). Any ambiguities in state law or contested fact issues must be resolved in favor of the plaintiff. *Id.*

To the extent that the parties have presented evidence relevant to this improper joinder analysis, the Court will pierce the pleadings as necessary. However, the Court will focus the inquiry on whether the plaintiff's state court petition provides a reasonable basis to predict that she may recover against the in-state defendants under Texas law. *Smallwood*, 385 F.3d at 573-74. As stated herein, the petition as filed in the state court at the time of removal controls the inquiry. *See*

*Cavallini*, 44 F.3d at 264. If the pleading reveals a reasonable basis of recovery on just one cause of action, the court must remand the entire suit to state court. *See Grey v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004); *see also Edwea, Inc. v. Allstate Ins. Co.*, No. H-10-2970, 2010 WL 5099607, 2010 U.S. Dist. LEXIS 129582 at *6 (S.D. Tex. Dec. 8, 2010) (citing *Rubin v. Daimlerchrysler Corp.,* No. Civ. A. H044021, 2005 U.S. Dist. LEXIS 42102, 2005 WL 1214605, at *2 (S.D. Tex. May 20, 2005) (citing *Griggs*, 181 F.3d at 700; *Alonso ex. rel. Estate of Cagle v. Maytag Corp*., 356 F. Supp. 2d 757, 761 (S.D. Tex. 2005)).

      iii.     Pleading Requirements and Improper Joinder

In evaluating a plaintiff's petition and the facts alleged therein for purposes of determining improper joinder, this court has previously utilized a Rule 12(b)(6) analysis, applying the federal pleading standards articulated by the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, __U.S.__, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In *Twombly* and *Iqbal*, the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). As other courts have recognized, there is a tension between the federal pleading-sufficiency standard and the more liberal Texas notice pleading rules. *See First Baptist Church*, 2008 U.S. Dist. LEXIS 75961, 2008 WL 4533729, at *4, n.6; *see also Centro Cristiano Final, Inc. v. Ohio Cas. Ins. Co.*, No. H-10-1846, 2011 WL 240335, 2011 U.S. Dist. LEXIS 6541 at *44-*45 (S.D. Tex. Jan. 20, 2011) ("[t]he issue of improper joinder here is complicated by the substantial difference in pleading standards between Federal and Texas Rules of Civil Procedure. Pleading standards are far more lenient in Texas state court [.]")

In contrast, Texas follows a "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). A petition is sufficient if it gives fair and adequate notice of the facts upon which a pleader bases his claim. *Id.* The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense. *Id.* The test of the "fair notice" pleading requirement is whether an opposing attorney of reasonable competence, with pleadings before him, can ascertain [the] nature and basic issues of controversy and testimony probably relevant. *City of Alamo v. Casas*, 960 S.W.2d 240, 251 (Tex. App.–Corpus Christi 1997, pet. denied). A petition is sufficiently pled if one can reasonably infer a cause of action or defense from what is specifically stated. *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993).

Closer consideration of the pleading standards in the context of the improper joinder analysis leads the Court to conclude that the Texas notice pleading requirements should apply. As guidance, this Court looks to United States District Judge Lee Rosenthal's recent opinion in *Edwea, Inc. v. Allstate Ins. Co.*, No. H-10-2970, 2010 WL 5099607, 2010 U.S. Dist. LEXIS 129582 (S.D. Tex. Dec. 8, 2010). After a thorough evaluation of the case law on the issue, Judge Rosenthal concluded that "neither *Smallwood* nor *Griggs* requires a district court to test the sufficiency of a state court petition under *Twonbly* and *Iqbal* in conducting an improper joinder analysis when the state-court pleading standards are more lenient." *Edwea*, 2010 U.S. Dist. LEXIS 129582 at *18. In support, the *Edwea* court points out that "the majority of courts have held that a federal court should not look to the federal standard for pleading sufficiently under Rule 8 and 12(b)(6) to determine whether the state-court petition provides a reasonable basis for predicting that the

-14-

plaintiff could recover against the in-state defendant at least when, as here, the state pleading standard is more lenient." *Id.* 2010 U.S. Dist. LEXIS 129582 at \*12-\*13. Judge Rosenthal then goes on to cite approximately thirteen other cases in support. *Id.* at \*13-\*16. She also points out that the oft-cited statement from *Griggs* requiring a "factual fit" between the plaintiffs' allegations and the pled theory of recovery was not made in the context of a Rule 12(b)(6) analysis of an improper joinder argument, but rather was made in the context of the summary judgment-like procedure sometimes utilized in improper joinder cases. *Id.* at \*11-\*12. Judge Rosenthal explains that *Griggs*, like *Smallwood*, was decided pre-*Twombly* and pre-*Iqbal*, and *Griggs* does not actually provide guidance on whether the federal pleading standard applies to a motion to remand based on improper joinder when that motion is analyzed based solely on the state-court petition. *See id.* at \*12.

This approach seems the most practical, as applying the *Iqbal* federal pleading standard to the improper joinder analysis makes little sense given that the plaintiff filed the action in state court and was not required to comply with federal pleading standards at the time of filing. *See id.* at \*18 (quoting *Kongelf v. Sears Holding Corp.*, No. 4:09-cv-038, 2010 U.S. Dist. LEXIS 58323, 2010 WL 1977833, at \*3 (D.N.D. Apr. 7, 2010)). Because the original petition here was pled in state court in accordance with the Texas pleading standard, it would be unfair to hold it to the more stringent standard in federal court. *See Centro Cristiano*, 2011 U.S. Dist. LEXIS 6541 at \*48. Accordingly, the court will consider the Texas fair notice pleading standard rather than the stricter Rule 8/*Iqbal*/*Twombly* federal pleading standard when reviewing the plaintiff's claims as pled in the Original Petition under the *Smallwood* improper joinder analysis.

iv. Improper Joinder Analysis Applies to Claims in Original Petition, not Amended Complaint

As discussed above, the plaintiff filed a motion for leave to amend her complaint, which is currently pending before the Court. The Court points out that the case law dictates that a post-removal amendment does not affect the Court's analysis of the plaintiff's claims in the Original Petition for purposes of determining improper joinder as alleged by the defendant. It follows that if the plaintiff's claims are amended after removal, this would have no bearing on the Court's remand analysis, as explained below.

Jurisdiction is fixed at the time of removal. *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996). Generally, jurisdiction is determined at the time suit is filed and most post-removal developments – amendment of pleadings to below jurisdictional amount or change in citizenship of a party – will not divest the court of jurisdiction. *See Santander Consumer USA Inc. v. Manheim Automotive Fin. Svcs., Inc.,* 652 F. Supp. 2d 805, 809-810 (W.D. Tex. 2009) (quoting *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1181 (5th Cir. 1987)). The existence of federal subject matter jurisdiction is determined at the time of removal and a complaint amended post-removal cannot divest a federal court of jurisdiction. *See Hamp's Constr. LLC v. Tag-Mississippi Enters., LLC,* No. 09-4256, 2009 WL 2356671, 2009 U.S. Dist. LEXIS 70122 at *6 (E.D. La. July 27, 2009) (citing *Doddy*, 101 F.3d at 456; *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292, 58 S. Ct. 586, 82 L. Ed. 845 (1938)).

When considering whether a non-diverse party is properly joined to a suit, a district court must consider the facts as set forth in the state court petition *on the date of removal*. *Ford v. Prop. & Cas. Ins. Co. of Hartford*, No. H-09-1731, 2009 WL 482522, 2009 U.S. Dist. LEXIS 114750, at *4 (S.D. Tex. Dec. 9, 2009) (emphasis in original) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534,

537, 59 S. Ct. 347, 83 L. Ed. 334 (1939); *Cavallini*, 44 F.3d at 264 ("[I]t would have been futile to

grant the motion [to amend], because a complaint amended post-removal cannot divest a federal

court of jurisdiction.")). The fraudulent joinder doctrine does not apply to joinders that occur *after*

an action is removed. *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009) (quoting *Cobb*

*v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999)) (emphasis in original). Instead, the

doctrine permits courts to ignore "only those non-diverse parties *on the record in state court at the*

*time of removal*." *Id*. Quoting *Cobb*, 186 F.3d at 677 (emphasis in original). *Id*. The *Cobb* court

reasoned that, when a non-diverse defendant is named in an original state court action to prevent

removal, the diverse defendant has no opportunity to contest joinder before it occurs and must rely

upon the fraudulent joinder doctrine. *Id.* Citing *Cobb*, at 678. Also, in *Cavallini*, the Fifth Circuit

explained the rationale supporting the "time of removal" rule:

> "[t]he rationale for determining removal jurisdiction on the basis of claims in the state court
>
> complaint as it exists at the time of removal is obvious. Without such a rule, disposition of
>
> the issue would never be final, but would instead have to be revisited every time the plaintiff
>
> sought to amend the complaint to assert a new cause of action against the nondiverse
>
> defendant, all at considerable expense and delay to the parties and the state and federal
>
> courts involved. Limiting the removal jurisdiction question to the claims in the state court
>
> complaint avoids that unacceptable result, and permits early resolution of which court has
>
> jurisdiction, so that the parties and the court can proceed with, and expeditiously conclude,
>
> the litigation."

*Cavallini,* 44 F.3d at 264. Accordingly, as explained in the *Ford* case, the plaintiff's amended

complaint is of no import to the present improper joinder analysis. *See Ford*, 2010 U.S. Dist LEXIS

114750 at *4. Instead, the court will consider the allegations as set forth in the plaintiff's Original

Petition on the date of removal. *Id.* at *4-*5 (citing *Pullman*, 305 U.S. at 537, 59 S. Ct. 347;

*Cavallini*, 44 F.3d at 264).[5]

### Discussion:    Application to Plaintiff's Claims

i.    Claims against the Non-diverse Defendants and the Texas Insurance Code:  Are the individual defendants "persons" subject to liability within the meaning of the Texas Insurance Code?

As discussed above, the Original Petition states that Randolph violated provisions of the

Texas Insurance Code, specifically alleging violations of Section 541.060 of the Code, which

governs unfair settlement practices. *See Original Petition*, at pp. 7-8; *see also* TEX. INS. CODE §

541.060.    Against Ayers, plaintiff claims violations of Section 541.061(1), (2), and (3), also

governing unfair settlement practices, and prohibiting misrepresentation of an insurance policy, as

well as claims of misrepresentation and false advertising of insurance coverage, in violation of TEX.

INS. CODE § 541.051(1)(A).  *See* TEX. INS. CODE § 541.061; 541.051(1)(A).

Section 541.003 of the Texas Insurance Code states that "[a] person may not engage in...an

unfair or deceptive act in the business of insurance."  The word "person," however, does not refer

to just anyone.  Section 541.002(2) of the Texas Insurance Code defines a person as "an individual,

---

[5]Much of the precedent discussing the principal of considering the pleadings at the time of removal goes on to explain that "[i]n contrast, a diverse defendant [that the plaintiff attempts to add post-removal] can argue that a *post-removal* joinder is improper *before* the court grants the plaintiff leave to amend. *Borden*, 589 F.3d 168 (citing *Cobb*, 186 F.3d at 677.   Courts also explain that a plaintiff's request to join a non-diverse defendant *after removal* of an action is to be resolved in accordance with 28 U.S.C. § 1447(e) and the factors enunciated by the Fifth Circuit in *Hensgens v. Deere & Co*, 833 F.2d 1179 (5th Cir. 1987). *See Santander Consumer USA Inc. v. Manheim Automotive Fin. Svcs., Inc.,* 652 F. Supp. 2d 805, 809-810 (W.D. Tex. 2009) (if after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject-matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the Sate court); *Humphries v. Kroger Co.*, No. 5:06-CV-2, 2007 WL 533724,  2007 U.S. Dist. LEXIS 11305 (S.D. Miss. Feb. 15, 2007).  These considerations do not apply here because the parties were non-diverse at the time of removal.

corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster, or life and health insurance counselor." TEX. INS. CODE. § 541.002(2). Thus, to be a "person" who may be liable for committing a deceptive act, the individual must be engaged in the business of insurance.

In *Liberty Mutual Ins. Co. v. Garrison Contractors, Inc.*[6], the Texas Supreme Court held that this statutory language is broad enough to permit a cause of action against an insurance agent, employee, or other representative who engages in unfair or deceptive acts or practices. *See Garrison*, 966 S.W.2d 482, 486-87 (Tex. 1998). In *Garrison*, the plaintiff specifically alleged that an agent misrepresented the amount of premium due under a policy, and the Texas Supreme Court held that an agent could be held liable for such a misrepresentation. *See id.* The *Garrison* Court determined that independent agents and brokers, as well as employees of insurance companies are "persons" under the Texas Insurance Code.[7] *Id. See also Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000). Texas law also clearly authorizes actions against insurance adjusters in their

[6]The Texas Supreme Court's opinion in *Garrison* interpreted provisions of Article 21.21 of the Texas Insurance Code, the predecessor statute to the sections of the Insurance Code at issue here. Article 21.21 was recodified as Chapter 541, effective April 1, 2005. *See* Act of June 21, 2003, 78th Leg., R.S., ch. 1274, § 1 (2003). The Texas Supreme Court has since noted that the Texas Legislature's recodification of the Texas Insurance Code involved "nonsubstantive revisions renumbering and reorganizing the Insurance Code." *Farmers Group, Inc. v. Lubin*, 222 S. W.3d 417, 422 n.11 (Tex. 2007). As no material changes were made in the provisions relevant to this suit, the Court will cite to the current Code. *See Mayorga v. Gov't Employees Ins. Co.*, No. C-09-339, 2010 WL 300350, 2010 U.S. Dist. LEXIS 4023 at *2 n.1 (S.D. Tex. Jan. 20, 2010) (citing *Lubin*, 222 S.W. 3d at 422 n.11 with regard to Chapter 541 of the current Code).

[7]In *Garrison*, the Texas Supreme Court did emphasize that "not every employee of an insurance company is a 'person' under [the Insurance Code] subject to suit." 966 S.W.2d at 486 To come within the statute, an employee must engage in the business of insurance. *Id.* An employee who has no responsibility for the sale or servicing of insurance policies and no special insurance expertise, such as a clerical worker or janitor, does not engage in the insurance business for purposes of Section 541 liability. *Id. See also Mayorga*, 2010 U.S. Dist. LEXIS 4023 at *7.

individual capacities.  *See Broadway v. Brewer*, No. 4:08-CV-475, 2009 U.S. Dist. LEXIS 433358

(E.D. Tex. May 20, 2009) (Bush, J.) (citing *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278,

282 (5th Cir. 2007)).  The Insurance Code provides that an "adjuster"[8] is included under the

definition of "person", as is an "agent."  TEX. INS. CODE. § 541.002(2).  *See also Jones v. Ace*

*American Ins. Co.*, No. 1:06-CV-616, 2006 WL 3826998, 2006 U.S. Dist. LEXIS 93346 at *16-*17

(E.D. Tex. Dec. 22, 2006) (Crone, J.).  Hence, an insurance adjuster, much like an insurance agent,

can be subject to suit under the Insurance Code.  *Jones*, at *17 (citations omitted); *Liberty Mutual*

*Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485-86 (Tex. 1998).

Therefore, although adjusters and agents may be subject to liability under the Insurance

Code as a general rule, it must be determined whether Randolph and Ayers, specifically, were

persons engaged in the business of insurance with respect to Myers' claims.  *See, e.g., Jones*, 2006

U.S. Dist. LEXIS at *17-*18 (citing *Vargas v. State Farm Lloyds*, 216 F. Supp. 2d 643, 648-49

(S.D. Tex. 2002) (""[h]aving determined that insurance adjusters as a general matter are subject to

[Texas Insurance Code] liability, the Court must now confront the factual inquiry of whether

Defendant....in particular is a person engaged in the business of insurance with respect to

[plaintiff's] claim")).

The plaintiff's Original Petition states that Randolph engages in the business of adjusting.

*See Original Petition*, at p. 1.  The claims against Randolph are based upon her alleged

---

[8]In pertinent part, the Texas Insurance Code defines an adjuster as "an individual who... investigates or adjusts losses on behalf of an insurer as an independent contractor or as an employee of ...an insurer... [or] supervises the handling of claims."  TEX. INS. CODE § 4101.001(a).  The Code also describes an agent as one who, among other things, solicits insurance on behalf of the insurer, receives or transmits other than on the person's own behalf an application for insurance or an insurance policy to or from the insurer, receives or transmits an insurance policy of the insurer, and receives , collects, or transmits an insurance premium.  *See* TEX. INS. CODE § 4001.051(b) (setting forth acts constituting acting as agent and consequences of agent's actions).

misrepresentations about coverage under the Policy and improper handling of the claim and settlement process. *Id.* at pp. 4-5.

The plaintiff relatedly states that Ayers engages in the business of selling insurance in the State of Texas. *Id.* at p. 2. As described in detail above, the plaintiff contends, in sum, that Ayers wrongfully failed to obtain the amount of flood coverage requested by the plaintiff under her Allstate policy and that he made various statements and misrepresentations about the Policy. *Id.* at pp. 12-14.

Taking the plaintiff's statements in the Original Petition about these defendants and their alleged role as adjuster and agent, respectively, as true,[9] the Court finds that Randolph and Ayers may be considered persons engaged in the business of insurance with respect to the plaintiff's claims.

ii.     Texas Insurance Code Claims:  Does the state court petition allege sufficient facts to support a cause of action against the  non-diverse defendants?

Other courts have concluded that a non-diverse defendant was not improperly joined on Texas Insurance Code claims when a plaintiff's pleading ascribed specific conduct to the defendant, such as misrepresenting that a policy covers plumbing leaks and thereafter hiring a biased engineer[10]; misrepresenting that a policy provides 100 per cent coverage against mold damage[11]; misrepresenting that defendant was present at plaintiff's home to inspect mold damage and that

---

[9] *See Travis*, 326 F.3d at 649 (the court must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff).

[10] *Clark v. State Farm Lloyd's*, No. 3:01-cv-1471, 2001 U.S. Dist. LEXIS 19304, 2001 WL 1516762 (N.D. Tex. Nov. 26, 2001).

[11] *Hernden v. State Farm Lloyd's,* No. SA-05-CA-1103, 2006 U.S. Dist. LEXIS 16190,  2006 WL 870663 (W.D. Tex. Mar. 02, 2006).

mold damage did not exceed plaintiff's deductible[12]; and "fail[ing] to commission a reasonable engineering inspection and indoor air quality investigation of the Plaintiffs' home"[13].

Because the Court finds that the plaintiff's claims against Ayers are alleged with more factual detail and specificity than those alleged against Randolph, the undersigned will focus on the causes of action against this non-diverse defendant first. The causes of action asserted against Ayers under the Texas Insurance Code include alleged violations of Section 541.061(1), (2) and (3), which states, in pertinent part:

> "It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:
> (1) making an untrue statement of material fact;
> (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
> (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact[.]"

TEX. INS. CODE. § 541.061(1),(2) and (3). Here, each of the plaintiff's contentions regarding unfair settlement practice closely tracks the language of this provision of the Texas Insurance Code. Plaintiff asserts that "[d]efendant Ayers' misrepresentation of the insurance coverage, as described above, in making an untrue statement of material fact, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance." *See Original Petition*, at p. 15 (citing TEX. INS. CODE. § 541.061(1)). Plaintiff further states that "Ayers' misrepresentation of the insurance coverage...in failing to state a material fact that is necessary to make other statements made not misleading considering the circumstance under which the statements were made, constitutes an unfair method of competition and an unfair and deceptive

---

[12] *Martin v. Chubb Lloyds Ins. Co. of Texas*, 2004 WL 2526425 (W.D. Tex, Oct. 21, 2004).

[13] *Killion v. Allstate Texas Lloyd's Co., et al.*, 2004 WL 612843, at *6 (S.D. Tex., Feb. 25, 2004).

act or practice in the business of insurance." *Id.* at pp. 15-16. Citing TEX. INS. CODE § 541.061(2). Further, the plaintiff contends that "Ayers' misrepresentation of...the insurance coverage...in making a statement in such a manner a[s] to mislead a reasonably prudent person to a false conclusion of material fact, constitutes an unfair method and an unfair and deceptive act or practice in the business of insurance." *Id.* at p. 16. Citing TEX. INS. CODE. § 541.061(3).

In addition to these pled causes of action, the plaintiff's petition goes beyond near-verbatim recitation of these Code provisions.[14] This is also not a case in which the non-diverse defendant is grouped with the insurer defendant collectively, and referred to as "defendants," as has been the situation in other pleadings before this Court when remand was denied based upon improper joinder. *See, e.g., McCord v. Prudential Ins. Co. of Am.*, No. 1:10-CV-413, *Memorandum Order and Opinion re Remand* (doc. #40, Feb. 10, 2011); *see also Taj Properties, LLC v. Zurich Am. Ins. Co.*, No. H-10-2512, 2010 WL 4923473, 2010 U.S. Dist. LEXIS 125357 at *11-*12 (S.D. Tex. Nov. 29, 2010) ("[a]llegations merely asserted against "Defendants" without alleging what facts are attributable to the adjuster individually as opposed to the insurance company do not provide a reasonable basis for recovering from the adjuster"). Here, the plaintiff has set forth conduct attributable to Ayers directly and individually. The plaintiff claims that Ayers failed to purchase the amount of flood coverage that plaintiff requested. *See Original Petition,* at p. 12. She claims that Ayers agreed to obtain the $75,000 in coverage that she requested, but she subsequently discovered that he failed to do so. *Id.* at pp. 12-13. She states that "Ayers agreed to obtain $75,000 in flood coverage, effective immediately." *Id.* at p. 12. She states that Ayers sold the Policy to her

---

[14] *Compare Lakewood*, 2009 U.S. Dist. LEXIS 99854 at *9. (finding that allegations which are solely "near-verbatim" recitations of the Insurance Code are insufficient to state a claim against individual defendants because there were no facts alleging what acts were attributable to those defendants).

by representing that the Policy provided coverage for all perils as requested, and the Policy was sold based upon this representation. *Id.* at p. 13. She therefore contends that Ayers made misrepresentations about her flood coverage, and the crux of her claims against Ayers arise from this misrepresentation: "[d]efendant Ayers made various statements and misrepresentations about the Policy issued to Plaintiff. Specifically, Defendant misrepresented that it provided $75,000 in flood coverage for losses including those caused by Hurricane Ike." *Id*. at 13. As explained below, taking these factual allegations as true, along with the entirety of the facts alleged against Ayers in the Original Petition, there is pled conduct attributable to Ayers here which the Court concludes sufficiently provides a reasonable basis to conclude that the plaintiff might be able to recover against at least one non-diverse defendant  - Ayers - under Texas law.

Texas law provides a cause of action against an insurance agent for negligent misrepresentation, and, similarly, an agent who "misrepresents specific policy terms prior to a loss" may violate the Texas Insurance Code or DTPA if "the insured's reliance upon that misrepresentation actually causes the insured to incur damages." *See Edwea*, 2010 U.S. Dist. LEXIS 129582 at *22 (quoting *Hernden v. State Farm Lloyds*, No. SA-05-CA-1103-RF, 2006 U.S. Dist. LEXIS 16190, 2006 WL 870663, at *3 (W.D. Tex. Mar. 2, 2006) (citing *Griggs*, 181 F.3d at 701)). That only affirmative misrepresentations of specific aspects of a policy are actionable may be an accurate statement of Texas law. *Brankin v. Time Ins. Co.*, No. 4:08-CV-666-Y, 2009 WL 614818, 2009 U.S. Dist. LEXIS 180004 at * (N.D. Tex. March 10, 2009) (citing *Moore v. Whitney-Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.--San Antonio 1998, no pet.)) ("In the absence of some specific misrepresentation by the insurer or agent about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable under the [Texas

Deceptive Trade Practices Act].").  In *May v. United States Services Association of America*, the Texas Supreme Court observed that "it is established in Texas that an insurance agent who undertakes to procure insurance for another owes a duty to a client to use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so." *May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex. 1992).  The *May* court noted that agents had been held liable in cases where "the agent induced the plaintiff to rely on his performance of the undertaking to procure insurance, and the plaintiff reasonably, but to his detriment, assumed that he was insured against the risk that caused his loss."  *Id.* at 669.

Here, the plaintiff has set forth affirmative representations which she alleges Ayers made about her flood coverage under the Policy.  She states that he agreed to obtain the $75,000 in coverage that she requested.  She relied upon this representation about the amount of coverage when the Policy was sold to her.  Her claims under the Texas Insurance Code, as well as her claims under the DTPA and for fraudulent misrepresentation, negligent misrepresentation, fraud, and breach of contract are all based on Ayers' alleged statements and misrepresentations about the flood coverage under the Policy.  The facts allege that he represented to her that the $75,000 in coverage would be obtained, and it was not.

It is true that under Texas law an insured has a duty to read her policy and is deemed to have knowledge of its terms, but an insurance agent may also be held liable for affirmative misrepresentations about the terms of the policy, as discussed above.  *See Brankin*, 2009 U.S. Dist LEXIS 18004 at *11-*12 (citing *Heritage Manor of Blaylock Prop. v. Petersson*, 677 S.W.2d 689, 691 (Tex. App.--Dallas 1984, writ ref'd n.r.e.);  *Ruiz v. Gov't Employees Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.--El Paso 1999, no pet.); *Garrison Contractors, Inc. v. Liberty Mutual Insurance*

*Company*, 927 S.W.2d 296, 300 (Tex. App.--El Paso 1996), aff'd by 966 S.W.2d 482 (Tex. 1998)). In this case, the plaintiff's factual allegations go beyond a mere failure to disclose on the part of Ayers. Rather, she states that she relied on his affirmative representation that the $75,000 in coverage was part of the Policy. These factual allegations, taken as true, are sufficient to state a claim under the Insurance Code. *See, e.g., Brankin*, at *12 (citing Tex. Ins. Code. § 541.061). The facts alleged against Ayers fit squarely within the type of conduct prohibited by Section 541.061(1), (2) and (3). The plaintiff has further pled facts suggesting that Ayers' misrepresentation caused her damages in that she relied upon the statement that she had $75,000 in flood coverage, and she identifies a particular representation which is causally connected to her damages. *See Griggs*, at 181 F.3d at 701-702 (discussing *Garrison* and *State Farm Fire & Casualty Co. v. Gros*, 818 S.W.2d 908 (Tex. App.–Austin 1991, no writ), in which Texas courts acknowledged that a sales agent may be individually liable under the Insurance Code and DTPA when the agent misrepresents specific policy terms prior to a loss, and noting that the insured's damages in those cases could be linked to a particular representation). Under the Texas pleading standards, these allegations put Ayers on fair notice of the allegations against him, including the specific conduct giving rise to the alleged Insurance Code violations.

Additionally, the Court is obligated to resolve any ambiguities in controlling state law in favor of the plaintiff on the improper joinder analysis. *See Sid Richardson Carbon & Gasoline Co. v. Interenergy Res.*, 99 F.3d 746, 751 (5th Cir. 1996). The Court concludes that the allegations against Ayers in the Original Petition provide a sufficient basis to predict that the plaintiff may be able to recover against Ayers under Texas law.

Therefore, under the circumstances here, Allstate has not established that there is no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant or that there exists "no reasonable basis...to predict that the plaintiff might be able to recover against [Ayers]" on the Texas Insurance Code claims as pled in the Original Petition. *Smallwood*, 385 F.3d at 573; *see also Cavallini*, 44 F.3d at 259. While it has not been conclusively shown that Texas law would impose liability on Ayers in this situation, the Court is unable to conclude that the plaintiff cannot possibly recover against Ayers under the Texas Insurance Code. *See Jones*, 2006 U.S. Dist. LEXIS 93346 at *22. Taking the plaintiff's pleadings as true, the Court cannot predict with absolute certainty that a Texas court would summarily dismiss the causes of action asserted against the defendants here. *Id.* Quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 554 (5th Cir. 1981). The undersigned re-iterates that the facts presented need not irrefutably establish that Texas law will impose liability on Ayers. *See Davis v. Travelers Lloyds of Tex. Ins. Co.,* No. H-09-2260, 2009 WL 3255093, 2009 U.S. Dist. LEXIS 89676 at *16-*17 (S.D. Tex. Sept. 29, 2009). At this point, the plaintiff is not required to make such a showing. Rather, the defendant's duty is to show with certainty that the plaintiff has *no possibility* of recovery against Ayers in light of the facts presented and the inference that this Court is required to deduce from such facts. *See id.* (Emphasis in original). Accordingly, the Court concludes that the plaintiff's claims under the Texas Insurance Code against Ayers stand as pled for purposes of remand and he was not improperly joined on these claims under the relevant analysis.

**Discussion: Plaintiff's Argument that the Removal is Procedurally Defective**

In her motion to remand, the plaintiff argues that Allstate's removal is procedurally defective because both Ayers and Randolph were properly served defendants, but they did not sign

the notice of removal or consent to removal in writing. *See Motion to Remand*, at p. 6. The Court finds this argument to be without merit. Defendants who are alleged to have been improperly or fraudulently joined to prevent removal need not join in the removal notice. *See Jernigan v. Ashland Oil Co.*, 989 F.2d 812 (5th Cir.), *cert. denied* 510 U.S. 868 (1993) ("[i]n cases involving alleged improper or fraudulent joinder of parties, however, application of [the consent] requirement to improperly or fraudulently joined parties would be nonsensical, as removal is those cases is based on the contention that no other proper defendant exists"); *accord Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007). This is an exception to the general rule that removal requires the consent of all co-defendants. *Jernigan*, 989 F.2d at 815; *see also* 16 J. Moore *et al.*, *Moore's Federal Practice* § 107.11[1][d] (3d ed. 2010). Accordingly, because at the time of removal Allstate argued that Randolph and Ayers were improperly joined, it was not required to obtain consent from those parties before removal.

### Discussion: Attorneys' Fees

In the motion to remand, the plaintiff also seeks an award of attorneys' fees, costs and expenses incurred as a result of the "improper removal." *See Motion to Remand*, at p. 13-14. 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The United States Supreme Court has directed that absent unusual circumstances, attorneys' fees should not be awarded under Section 1447(c) when the removing party has an objectively reasonable basis for seeking removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005).

In this case, the Court concludes that Allstate presented an objectively reasonable basis for seeking removal. While the Court finds that Allstate did not meet its burden on removal and establishing improper joinder, based on the briefs and case law presented by Allstate, the Court cannot conclude that there was no objectively reasonable basis for taking the position that removal was proper. *See, e.g., Harris v. Allstate Texas Lloyd's*, No. H-10-0753, 2010 WL 1790744, 2010 U.S. Dist. LEXIS 43114 at *14 (S.D. Tex. April 30, 2010). The arguments in favor of removal were not wholly unreasonable and the Court concludes that attorneys fees and costs are unwarranted in this case under 28 U.S.C. § 1447(c). Plaintiff's request for costs and fees should therefore be denied.

### Conclusion and Order

Based on the findings, analysis, and legal conclusions set forth herein, the Court finds that the removing defendant has not established that the plaintiff's state court petition provides "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 326 F.3d at 573. The Court further finds that Ayers, a non-diverse defendants, was not improperly joined. Accordingly, the Court lacks subject matter jurisdiction as complete diversity of citizenship does not exist. Removal of this case to federal court was improper.

The undersigned United States Magistrate Judge therefore **ORDERS** that the motion to remand (doc. #7) is **GRANTED,** except to the extent that the plaintiff requested attorneys' fees. The request for attorneys' fees, costs, and expenses is denied.

The Clerk of Court is directed to **REMAND** this proceeding to the 128th District Court of Orange County, Texas, from which it was removed, in accordance with the usual procedure provided by the Local Rules for the Eastern District of Texas.

The Court further **ORDERS** that all pending motions not addressed herein are **DENIED as MOOT**, without prejudice to refile.

**SIGNED this the 8th day of March, 2011.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE